Case No. 15-7094 Michael Queen Appellant v. Ed Schultz Mr. Tepler for the Appellant, Mr. Hayes for the Affiliate Good morning, Your Honors. May it please the Court, Stephen Tepler for the Appellant, Michael Queen. The overarching theme of Mr. Queen's appeal is that although he was entitled to a full trial, he was also entitled to a fair trial. And we believe that he was not, and that provides the basis for a reversal and remand. I'd like to focus first on the business records exception that Mr. Queen has brought in our brief. The trial court error in refusing to admit more than 1,200 emails between the parties pursuant to Federal Rule of Evidence 8036. And it is clear that the 1,200 plus emails clearly sets forth regularity, extensive enterprise planning and performance, even payment and pilot production in connection with the efforts to create a political talk show featuring Mr. Schultz as the host. These admissions of these 1,200 emails spanning a startup, and it's critical to note here that this business was a startup, during a 14-month period between February 2008 and April 2009, would thus have clearly demonstrated to the jury the existence of a partnership and their exclusion was both an abuse of discretion and prejudicial to Mr. Queen's case. The trial judge improperly ruling Mr. Queen was not a credible custodian in that his record keeping was haphazard. This is a startup, and emails today are the sine qua non of how communications between most businesses, I would even presume to think almost every business, conducts business. And in fact, emails are almost passe. You now have text messages and emoticons, these symbols which denote concepts and communicative types of expressions, which are also finding their way into business communications. And so to rule that emails in any way do not constitute business records when generated with a regularity and with the volume and with the persistence that the parties did, we believe was error. There was no error. So you think emoticons are business records? Pardon me? You think emoticons are business records? Yes, I think, and if they're, yes. We've seen them start to be used in text messages and with each new introduction of emoticons. Because they come with inherent degrees of reliability. Inherent degrees of interpretation as well. It makes for an interesting jury question as to how these are interpreted and also presents challenges, I think, to counsel. You know, the frequency and the volume of these demonstrate regularity and trustworthiness, which, by the way, was not objected to by the appellee, by Mr. Schultz's counsel. And as the Pacheco case shows, the burden is on the opposing party to object to the trustworthiness of these emails. There was never any. The records custodianship of these emails was agreed to by stipulation at pretrial. And, in fact, the trial court noted with approval and call excellent that there was no need to have this composite set of emails authenticated piece by piece individually. As for any hearsay issues that might have been contained within these emails, certainly during the pretrial period two weeks before the trial, these issues and redactions, appropriate redactions, could have been made, but no objection was made by the appellee, Mr. Schultz, and there was no motion in limine related to that composite set. And, in addition, the appellee, Mr. Schultz's counsel, has had this composite set of emails at least since 2011 in the prior proceeding. The trial judge also ruled on the content as puffery. And I'd like to take a moment to state that in looking at the emails that are set forth in Mr. Queen's brief, both in the initial as well as the reply brief, it's clear that there was discussion about partnership splits, about scheduling for appearances, about funding, about the payment, about the production facilities that were to be used in creating the pilot. All of this indicates not only a planning but an execution, a performance, and a goal towards achieving a specific objective, which underscores the evidence that fully supports the existence of a partnership. And the exclusion of these emails, as hearsay not covered under the business records exception, flies in the face of today's business reality. I'd like next to talk about the spoliation issue that we raised in our briefs. Under either the old rule or the new Rule 37, and I understand that if this were to be reversed and remanded, that new Rule 37 would apply in accordance with Justice Roberts' admonition that current cases be determined under that rule. The trial court would have erred nonetheless in ruling that Mr. Schultz had no reasonable anticipation of litigation to preserve until litigation commenced in 2009. Mr. Schultz took no reasonable steps to preserve at all, neither did Mr. Landa, who it is admitted represented both Mr. Queen and Mr. Schultz as part of the partnership. And both Mr. Landa and Mr. Schultz had an obligation to preserve these emails, both as a duty to the partnership and as a duty to each individual of the partnership and to the individuals themselves. Mr. Schultz admitted to deleting all of his emails. Are those emails ones from Queen? Pardon me? Are the emails that are with respect to Schultz, are they emails from Queen? Yes, they are. All the emails that have been produced in this are from Mr. Queen. Mr. Schultz produced no emails. And did Queen preserve the emails? Mr. Queen did preserve his emails. These emails were a Gmail account, were a Google Mail account. So there was no question and no objection and no assertion that these emails had not been preserved or preserved at Google. And, you know, the trial court in deciding not to impose sanctions erred in considering five different trigger dates. The only trigger date that the court focused on was the trigger date involving the first meeting between the appellate and the appellee. I'm sorry to go back to this, but if Queen preserved the emails, then what's the harm? The harm is that there were emails between Mr. Landa and Mr. Schultz which we are fairly certain were not disclosed because there was at least one email from Mr. Landa to Mr. Schultz, which Mr. Schultz then forwarded to Mr. Queen and which Mr. Queen produced. So we assume that there were other, and that email basically told Mr. Schultz not to sign any partnership agreement. So we assume, we can only presume that there must have been additional emails that were both prejudicial as well as relevant to the appellant's case, Mr. Queen's case. So there was a March 3rd email forward from Schultz to Landa discussing negative minds. March 5th, Schultz to Queen discussing partnership splits and percentages. March 16th of 08 landed to Queen terms of agreement that Schultz would be willing to sign. April 5th, 2008, the Schultz to Queen email that states that any TV deal will involve Mr. Queen and will involve him financially and that Mr. Schultz would not screw Mr. Queen, and I quote, May 28th, 2008, from Schultz to Queen, let's leave legal matters at the water, Judge. I'm not going to screw you. That's in the appendix, joint appendix at 666. These types of comments from Mr. Schultz to Mr. Queen certainly indicated that if there was some friction between the parties and certainly when somebody starts talking about legal matters at water's edge, it almost presumes that somebody thinks that there's going to be a problem down the line and certainly there was a trigger to preserve the electronically stored information. So Mr. Landa was, Mr. Schultz admitted that Mr. Landa was counsel for both Mr. Queen and Mr. Schultz. Also, the trial court instructed the jury, and we believe that this is very, very serious error in the trial court's part, that there was no evidence in the record about Mr. Schultz having deleted his email despite Mr. Schultz's testimony in open court that he had deleted his emails and despite numerous references in motions for spoliation that the appellant filed, that Mr. Queen filed in court, and despite the argument at the charging conference. And these were all part of the appendix and part of the records, Your Honors. This failure to, this positive instruction to the jury to ignore what was a critical fact in this case, that Mr. Schultz had deleted all his emails, we believe also provides ample basis for reversal and remand. So we have only one email between Mr. Landa and Mr. Schultz that was produced, and we believe that that also was failed to be noted by the court. I'll turn last, and I realize I have very little time left, to judicial bias. There are many instances in which the tone and demeanor of the trial court indicated a bias towards appellant's counsel, towards Mr. Queen's counsel. The email deletions are one prime example. There's an encouragement of improper arguments to be made to the jury. The trial court encouraged appellant's counsel to use involuntary servitude as a good, quote-unquote, good argument to the jury, threatened appellant's counsel with unwarranted Rule 11 motions because of a paragraph and allegation in the original complaint, which when we attempted to correct it in an amended complaint by order of the court, was denied. So we were placed in a box by having to rely on an original complaint, which the court would not permit us to amend, even though the mandate from the court coming down was pretty simple, you know, partnership, formation, and breach. But because that one paragraph was not supported as evinced by our subsequent discovery and we were subsequent counsel, we were placed, as I recounted to the court, in a box. And I will reserve what little time I have left. Thank you. Thank you. Good morning. May it please the Court, John Hayes on behalf of Mr. Schultz. I respectfully submit that an overarching problem in this case, which percolates up in all these issues raised by the appellant, is the appellant's failure to amend his complaint after this court remanded. That created a circumstance in which neither the court nor the defendant knew what the partnership claim was. And I'll touch on some of the issues counsel has mentioned and relate them to that fundamental problem. When we began this trial, we did not know what this partnership claim was all about. Indeed, as the record indicates, until the plaintiff was cross-examined and admitted that his theory was that the partnership was formed in the hallway at Channel 4 during a 10-minute meeting in January of 2008, no one knew what the theory was. So, the emails being admitted as business records issue, I respectfully submit it is virtually impossible from reviewing the appellant's briefs to determine precisely which emails they're talking about. In the principal brief, the emails that the appellant talks about are the ones which came up at pretrial when Mr. Schultz filed a motion in limine. And that's mentioned in the appellant's brief. The motion in limine dealt with email communications between 10 individuals. And the court ultimately granted that motion in limine. That's the set, if you will, of emails that the appellant complains about in its primary brief, its initial brief in this court. Now, when you get to their reply brief, there are a lot of other emails. Indeed, I think it's pages 7 through 23 of the reply brief, which are made up of nothing more than citations to a series of emails with parenthetical descriptions of what they say. That's done, I would respectfully submit, because, as we pointed out in our brief, one of the things they're required to do in order to have these emails come in as business records is point to the ones they're talking about, authenticate them under cone, and explain how they would affect the outcome. That issue was not addressed below by the appellant. It's certainly not addressed coherently in their initial brief. And when you get to the reply brief, as I said, you have 16 pages of references to emails. Now, if you go through those, many of those emails were actually admitted as individual exhibits. So, for example, they complain about the email which is a JA666. Well, that's also a JA1783, and it was admitted. Similarly, if you look at JA721, they complain about that email, but it was admitted, and that's seen at JA1784. And I could go through actually some others. Several of these emails came in. So, as I said at the outset, it's not at all clear, I would respectfully submit, what the issue is with respect to the specific emails that the appellant claims should have been admitted as business records. Now, as I said a moment ago, if you look to cone, there are two criteria that cone mentions that are significant. The emails can be admitted if they're properly authenticated. There was no effort whatsoever at trial to properly authenticate these emails. As the trial judge said, I would submit quite appropriately, there were email dumps on more than one occasion during this trial. It started with an attempt to admit 1,200 pages on the first day of trial. That was not permitted. Subsequently, there were other email dumps, if you will, where the plaintiff wanted to put in a whole set of unauthenticated emails. Exhibit 1E is a prime example. That occurred at the end of the trial. But in no circumstance did this appellant make an effort to properly authenticate the emails. And the mere fact that someone-  Pardon me, Your Honor? And you objected on that? We did object, Your Honor. We objected when the 1,200 were offered in the first day of trial. Did you object on the basis of trustworthiness? Yes, Your Honor, and we objected on the basis of prejudice and hearsay because there's multiple layers of hearsay throughout these emails. And as the court said in Cohen, simply keeping and receiving emails is not enough to establish that they are trustworthy and therefore ought to be admitted. So I respectfully submit that the argument that the appellant advances with respect to the court's- I just want to follow up on that because- Yes, Your Honor. The plaintiff says that you didn't object on the basis of trustworthiness. Where is the objection in the record? Well, if Your Honor please, it depends on which set of emails we're talking about. So as I said a moment ago, on the first day of trial- I think it was the first day, certainly early in trial- the appellant offered 1,200 documents, which the appellant has always characterized as emails, but if you look through there, there's more than email in that binder. We objected to that. We had objected to it at pretrial as well. Hearsay was our primary objection at that point in addition to lack of foundation. Now, and the court did not admit those 1,200. Subsequently, the appellant offered segments of the 1,200. Let me put it that way. And Exhibit, I think it was 1E, was offered as the plaintiff rested. So you object initially on the basis of hearsay, and the plaintiff comes back and says business records exception. Ultimately, they did. Yeah, and then my question is whether under the business records exception, it's the opponent's burden to show lack of trustworthiness. And my question was, did you ever make that objection under 803? Well, I believe we did, Your Honor, in the sense that this issue was argued at pretrial. And Judge Howell made a ruling at pretrial, and indeed there was examination of the plaintiff during that hearing at which he was questioned about record-keeping procedures and other items that go to trustworthiness. And then there was an argument at pretrial about the admissibility. That's why he said I made no effort to make sure these were accurate. There was something to that. Yes, and I'm paraphrasing. His testimony was that he kept the emails, but he was more interested in trying to advance what he viewed as a partnership interest rather than keeping records. Again, that's a paraphrase of what he said. And there was an argument before the court at pretrial about whether they should be admitted under 803. So whether the argument was... So you didn't make a specific objection that these are not trustworthy under 803? No, Your Honor, I can't say we did specifically pick that out. I can't say that. But I can say that we objected each time it came up, and I can say, as I said at the outset, it came up several times. And I think this is significant. It's very difficult to tell, I would submit, exactly which ruling they're talking about here because of the sequence of events with regard to these emails. And I surmise that probably it's the ruling with respect to Exhibit 1E that they're actually complaining about, but those were admitted with the limiting instruction. And it's a limiting instruction that if you look at the record, the plaintiff requested. I thought they were arguing about both. They were arguing about the... I don't know if I have the numbering correctly, but 1E is the 200-some-odd emails that were introduced at the end of the plaintiff's case. They were supposed to be introduced at the end of the plaintiff's case. 226 pages, Your Honor. Yeah, 226 pages. And then there was the 1,200 that they're also arguing about. Yes, but they may be. But many of the 1,200 came in. So I don't know what the basis of the appellate issue is because they haven't specified. But at least some of them didn't. Pardon me? I'm not saying you necessarily lose on this, but at least some of them didn't come in. That's correct. But some of them didn't come in, and there was a colloquy a couple of times to the trial court about specific ones, which were, for example, with third parties without any authentication whatsoever. So they're being offered as a statement by a third party, presumably offers the truth of the matter asserted. And we had the continuing hearsay objection. That objection is a 403. Well, it was a hearsay and then a 403 objection. Yes, Your Honor. So because of the way the plaintiff approached these exhibits and presented them to the court, there is, I submit, confusion as to precisely what emails we're talking about here with regard to this appellate issue. And as I've said, the 1E emails came in with the limiting instruction that the plaintiff asked for. My time is up, so unless there are further questions, I'll... Thank you. Mr. Tepler, you are out of time, but we'll give you a minute for rebuttal. Thank you, Judge Bannon. I'll try to make this as quickly as possible. First, the court, all these documents were authenticated. They were authenticated at pretrial. The court acknowledges that the party so stipulated pretrial, and this is a quote from the pretrial conference, neither party objects to the authenticity of any of the exhibits. And then further, and this is the transcript, pretrial transcript in May of 24 to 25, the court also says, I'm not going to have to sit through a records custodian, and neither are the jurors. Mr. Queen, right? Mr. Schultz's counsel was silent. The court then responds, excellent. These records were all authenticated at pretrial. And Mr. Hayes talks about not one email shows one, you know, proves plaintiff's entire case or Mr. Queen's entire case. That wasn't the point. It was the set of emails that shows the context and the performance of the individuals in performing the partnership. There were many documents, many, many emails, that were also excluded on the basis of hearsay, not coming under the exception of 8036. Is counsel correct that the emails that you paraphrased or took quotations from in the reply brief, that some of them were in fact admitted? Some of them were admitted, Your Honor. I believe so. I believe that some of them were admitted. But we included this in the reply brief to show the regularity and show how these, in mass, the composite emails constituted business records. And so to the extent that they're persistent and regular and even Mr. Queen's testimony was that he kept them in chronological order and he kept them to the best of his ability. He claimed he was not a secretary, and that's correct. He testified that his aim was to further the partnership, was to further the aims of the partnership. Okay. So your submission or appeal is that all 1,200 of the emails and whatever other documents were in that folder, binder, should have been admitted? Under the business records exception, yes, and they were admitted for state of mind with a limiting instruction that basically eviscerated any value to the jury whatsoever, and we did preserve our objections based on that. No, but the limiting instruction wasn't for the 1,200, right? The limiting instruction was to the set of documents. There was no number that was indicated by the court. I thought there was 1,200 at the outset, and then at the end of the plaintiff's case it had narrowed to 226 pages, and the limiting instruction with respect to the 226 pages, is that correct? Yes. Yes. Thank you. Okay. The case will be submitted.
judges: Brown, Srinivasan, Randolph